## WOOLWORTH *v.* ROOT.

*(Circuit Court, D. Nebraska.* December 26, 1889.)

1. **JUDGMENT—RES ADJUDICATA—DEEDS—EFFECT OF RECORD.**

M., claiming to be the owner of a certain tract of land, brought suit against defendant to quiet title. A decree was entered May 8, 1873, quieting title in M. On June 24, 1873, M. deeded to complainant an undivided one-half. On the same day he conveyed the other undivided one-half to W., and on June 4, 1879, the executors of W. conveyed that undivided one-half to complainant. Defendant asserting title, and entering into possession of the land, complainant brought suit to quiet title in himself. It appeared that M., prior to the commencement of the suit, had executed a deed to W., dated August 19, 1869, and recorded September 15, 1869; and defendant claimed that M., therefore, had no title when he filed the bill, and that the decree was obtained by fraud upon the court; that defendant was not aware of the condition of the title at the time of the suit and decree, and was therefore not precluded from raising the question. *Held,* that the deed from M. to W., being recorded, was constructive notice to defendant, and he was concluded by the decree against him divesting his title, and vesting it in M.

2. **SAME—FRAUD.**

As the evidence showed that, prior to the filing of the bill, W., who was the brother of M., called on complainant, and produced a writing signed by the two brothers, the effect of which was to revest the title in M.; that by direction of W. complainant brought the suit in the name of M., who afterward confirmed all that had been stated; and that after the decree of 1873 it was agreed that M. should convey to complainant an undivided one-half of the premises,—this testimony removed all suggestion of fraud or wrong.

3. **SAME—DEED—COLLATERAL ATTACK.**

Defendant could not justify his attempt to avoid the effect of the decree on the ground of the insufficiency of the deed from M. to W., in 1869, because there were no witnesses to it.

4. **ADVERSE POSSESSION.**

As, by the decree and the deed made in pursuance of it, all title and right of possession in defendant was transferred to M., no retention of possession by defendant was adverse to the title conveyed, and he could set up no title based upon that possession until he had first given notice of his intention to claim adversely.

5. **WILLS—TESTAMENTARY POWERS.**

A will which specifically authorizes and empowers the executors "to grant, bargain, sell, and convey, if necessary, to mortgage, any and all real estate, and deeds, releases, and morgages to make and acknowledge, as fully and amply as I could do were I living," gives to the executors a power under which they can convey after the probating of the will, although no previous license was obtained from the probate court.

In Equity. Bill for an injunction.

*A. J. Poppleton* and *J. M. Woolworth,* for complainant.

*George W. Covell* and *J. L. Webster,* for defendant.

BREWER, J. This is a bill to carry into effect a decree of this court. In a general way, these may be stated as the facts: On August 27, 1870,

Oliver P. Morton, claiming to be the owner of a certain tract of land, began a suit in this court against Allen Root, this defendant, to quiet title. On May 8, 1873, a decree was entered declaring that Root had no title, and quieting the title in complainant, directing Root to make a deed to complainant, and, in case of his failure, appointing Watson B. Smith as special master, and directing him to execute such a deed. Allen Root, the defendant, did not make the deed as directed; and on July 4, 1873, Watson B. Smith, special master, made a deed to complainant, Oliver P. Morton. On June 24, 1873, after the date of the decree, complainant, Oliver P. Morton, and wife, deeded to the present complainant, James M. Woolworth, an undivided one-half. On the same day he conveyed the other undivided one-half to William S. T. Morton, and on June 4, 1879, the executors and executrix of William S. T. Morton, deceased, conveyed that undivided one-half to the complainant, James M. Woolworth. The present complainant, by this supplemental bill, shows that he has succeeded to all the rights and title of Oliver P. Morton; that defendant, notwithstanding the decree against him, is asserting title, and has entered into possession of the real estate; and prays for a writ to oust him from the possession, and to put complainant in; and also for an injunction restraining the defendant from asserting any right in or to the premises, or from occupying the same, or any part thereof.

Several questions have been raised and argued with great learning by counsel. It appears that Oliver P. Morton, prior to the commencement of this suit, had executed a deed to William S. T. Morton, which deed was dated August 19, 1869, and recorded September 15, 1869, in the records of this county; and it is claimed that Oliver P. Morton, therefore, had no title when he filed the bill, and that the decree was obtained by fraud upon the court; that the defendant was not aware of the condition of the title at the time of the suit and decree, and is therefore not now precluded from raising the question. Whatever actual knowledge the defendant may have had from Oliver P. and William S. T. Morton, the deed was recorded, and therefore implied notice, and Root is concluded by a decree against him divesting his title, and vesting it in Oliver P. Morton. But, further, the evidence shows that, prior to filing the bill, William S. T. Morton, the brother of Oliver, called on Mr. Woolworth, the present complainant, with reference to the title to this property and other litigations; that he produced a writing, signed by the two brothers, the effect of which was to revest the title in Oliver P. Morton; that, by direction of William S. T. Morton, Mr. Woolworth brought the suit in the name of Oliver; that afterwards Oliver confirmed all that had been stated; and that, after the decree of 1873, William was here, and settled with Mr. Woolworth for his services in that case and other matters, and agreed that Oliver should convey to Woolworth, as was done, an undivided one-half of the premises. This testimony does away with all suggestion of fraud or wrong. The title which the Morton brothers claimed was different from the one which defendant claimed, and it was a matter which did not concern him, in whose name the suit was brought, providing only a decree could be obtained binding as to the respective

titles. When his title was declared bad, and theirs good, it was a matter entirely immaterial to him in whose name the decree was rendered. As to Oliver and William, each assented to the proceeding as it was had. Each understood that it was a decree affirming the title which they claimed, and they dealt with the property after the decree as though the title was really in Oliver, and not in William.

Some question was made as to the sufficiency of the deed from Oliver to William in August, 1869, because there were no witnesses to it. But I put no stress upon that; the legal title was doubtless conveyed by that deed. The two brothers assented to the suit in the name of Oliver, had signed papers purporting to revest the title, and after the decree recognized the title as in Oliver. There was no wrong or fraud in this, and equity sees nothing of which the defendant can now avail himself to justify his attempt to avoid the effect of that decree.

Again, it is insisted by the defendant that the deed from the executors of William S. T. Morton failed to transfer any title, because the sale was not made under the directions of the probate court of this county, or in compliance with the laws of this state, with regard to sales of real estate of deceased persons. Any failure in this deed would not, of course, interfere with the transfer of title by deed from Oliver P. Morton directly to the present complainant, and I know of no reason why such present complainant could not invoke the benefit of this decree, even to protect a one-half interest. But is the deed from the executors incompetent to transfer title? The will was duly probated in Indiana, where the testator resided, and thereafter a copy of the will was filed in the county court of this county, and duly admitted to probate. The will not only gives general powers to the executors to execute the will, but specifically provides that they be fully authorized and empowered "to grant, bargain, sell, and convey, and if necessary to mortgage, any and all real estate, and deeds, releases, and mortgages to make and acknowledge, as fully and amply as I could do were I living." Now, this language in the will granted to the executors a power under which they could convey after the probating of the will, although no previous license was obtained from the probate court. See *Clark* v. *Tainter*, 7 Cush. 567; *Conklin* v. *Egerton's Adm'r*, 21 Wend. 429, and cases cited; *Newton* v. *Bronson*, 13 N. Y. 587; in which it is held that an executor is incompetent to act as such beyond the jurisdiction in which he is appointed, but that, if he be a donee of a power of sale contained in the will, he may execute the power beyond the jurisdiction, because he acts in conveying the land as a devisee of a power created by the owner of the estate, and not under authority conferred by the surrogate.

Finally, defendant insists he has acquired a title by possession for more than 10 years, and alleges that for more than 19 years last past he has been in the actual, open, notorious, exclusive, and adverse possession of all of the real estate, and by the testimony he introduces he endeavors to substantiate this claim. He says that he entered into possession in 1869, and has ever since been in possession. He does not pretend that the character of his possession has changed, or that any no-

tice was ever given to the Mortons or to this complainant of the title or claim under which he was holding possession since the date of the decree. In other words, he puts before the court a continuous possession, commencing in 1869, before the rendering of the decree, and lasting until the present time, with no change in the circumstances of such possession, and no notice to the complainant since that decree. Now, if the testimony sustained this allegation of possession, open, continuous, and exclusive, (and it comes very far short of it,) it would not avail the defendant aught. By the decree, and the deed made in pursuance of it, all title and right of possession in Root were transferred to complainant. They were equivalent to a voluntary conveyance by him to Morton. Under these circumstances, no retention of possession was adverse to the title conveyed, and he could not bolster up a title based upon that possession until he had first given notice of his intention to claim adversely.

These are the substantial questions, and must be resolved in favor of the present complainant. When the matter was before me on demurrer, I ruled that this proceeding could be maintained, and that by this supplemental bill complainant had a right to execute the decree. I see no necessity of reconsidering that question. I understand the rule in equity to be that when once a decree has been rendered the benefit of that decree can be obtained, not merely by the complainant, but by those holding under him. It would be strange that, after a decree had been rendered to quiet a complainant's title, any heir, devisee, or grantee from him should be put to the necessity of an independent suit for the purposes of securing the benefits of that adjudication. When the decree was rendered establishing the title of Morton, and quieting it as against any claim of defendant, that was an adjudication which defendant was bound to accept as final, unless by suitable proceedings in appeal he succeeded in reversing it. Instead of pursuing his legal remedy by appeal, he has sought in this indirect way to set aside that decree. Equity will tolerate no such proceeding. A decree will be entered as prayed for, enjoining him from setting up any claim to this property, and directing the marshal to put him out of possession, and restore possession to plaintiff.