DUPONT v. THE CHARLESTON BRIDGE CO.

1. EASEMENT—LICENSE—FERRY—BRIDGE.—A company had, under a charter, a right to maintain a ferry or bridge across a river, and authority was given to the corporators by their charter to establish also a turnpike road adjacent thereto. The company built its turn-pike over the lands of another without permission. On destruction of the bridge and establishing of a ferry the owner of the land on demand was granted free passage over ferry in consideration for maintenance of highway over her lands; this contract held to be

binding on the bridge company for benefit of all subsequent owners of the land, so long as the company used the turnpike, whether it maintained a bridge or a ferry.

2. Ibid.—Waiver.—Payment of toll over a bridge or ferry on demand, but under protest and assertion of right to cross free of toll, is not a waiver or abandonment of the right of free passage.

3. Judgment—Decree—Easement—Presumptions.—A perpetual right established by a decree is never presumed to be destroyed or lost by lapse of time.

4. Ibid.—Ibid.—Ibid.—Adverse Possession.—Where there is a judgment for the recovery of land or any right of property remaining unenforced for the statutory period, the defendant in possession is presumed to hold in subordination to the right fixed by the judgment or decree; but where the defendant in possession of the property in which a right has been fixed by the judgment or decree of the Court holds it adversely and in denial of such right for the statutory period, with full notice to the true owner of the adverse holding and denial of his right, the statute of limitations is a complete bar to any action for the enforcement of the right.

*Perkins* v. *Dunham,* 3 Strob., 225, *distinguished from this.*

Before Townsend, J., Charleston, May, 1902.   Reversed.

Action by Cornelia G. DuPont against the Charleston Bridge Co.   From decree in favor of plaintiff, defendant appeals.

*Messrs. Ficken, Hughes & Ficken,* for appellant, cite: *As to the construction of the resolution:* Lieb. Henn., 11, 43, 44; Black on Inter. of Laws, 3, 16, 28; 47 N. Y., 375; Story on Con., 401; 11 N. Y., 593; 9 Stat., 434, 482; 2 Par. on Con., 495. *Plaintiff has waived and abandoned her right of free passage:* Bish. on Con., sec. 792; 140 Mass., 472; 130 N. Y., 624; Wash. on Eas., 3 ed., 661; 149 Mass., 101; 4 McC., 104; 15 S. C., 35; 10 Ency., 2 ed., 437. *Right to cross free of toll is barred by statute:* Code of Proc., 112; 12 S. C., 42; Code, sub. 1, secs. 98, 104; 6 Rich. L., 300; 2 S. C., 496.

*Messrs. Young & Young,* contra, cite: *Plaintiff's right to pass over the bridge is res judicata:* 17 S. C., 40; 41 S. C., 172; Freem. on Judg., sec. 252; 8 Ency., 134. *As to the construction of the resolution:* 17 Ency., 2 ed., 14, 18, 21; 14 S. C., 165; 47 Fed. R., 381; 9 Wall., 407; 107 U. S.,

441; 63 S. C., 293; 21 S. C., 226; Bish. on Con., sec. 203; Chitty on Con., sec. 276. *Presumption arising from lapse of twenty years does not apply:* 17 Ency., 2 ed., 866; 121 N. Y., 628; Jones on Eas., secs. 845, 850; 3 Strob., 227; 4 McC., 106; 31 N. E., 896; 22 S. C., 546. *As to damages for acts continuing after suit commenced:* 5 Strob., 26; 39 S. C., 556. *Right to pass free of toll not waived:* 63 S. C., 188; 2 H. L., 57; 105 U. S., 359; 28 Ency., 528; Big. on Est., 2 ed., 1890, 663; 15 S. C., 35. *Paying toll was mistake of law and will be relieved against:* 2 J. & W., 205; L. R., 2 H. L., 149; L R., 3 Ch. Div., 779; 1 Ves., Sr., 126; Story Eq. Jur., sec. 121; 2 McM., 463; 1 Hill Ch., 251; 20 S. C., 230; 26 S. C., 41, 91, 450; 52 S. C., 245; 32 At. R., 566; 48 S. C., 458. *Plaintiff entitled to punitive damages:* 21 S. C., 599; 34 S. C., 311; 54 S. C., 500; 60 S. C., 73; 62 S. C., 234, 384; 64 S. C., 245.

April 1, 1903. The opinion of the Court was delivered by

Mr. Justice Woods. The Charleston Bridge Company was chartered by an act of the legislature, December 17th, 1808 (9 Stat., 434), for the purpose of establishing a bridge over Ashley River from the parish of St. Philip to the parish of St. Andrews; and authority was given to the corporators to establish also a turnpike road from the terminus of the bridge in the parish of St. Andrews to a point of intersection with another road. The charter was without limit of duration, but required both bridge and road to be completed within seven years from its date, and in the meantime the company was allowed to establish a ferry at the place fixed for the construction of the bridge. The bridge was completed in 1810, but was destroyed by a cyclone in 1813. There was no hope that the bridge would be rebuilt, and the legislature in 1815 established a ferry at the same place and vested it in The Charleston Bridge Company for twenty years. In 1834, the charter of the company was renewed for fourteen years, and it was given all the powers and privileges acquired under former acts of the legislature (9 Stat., 601). There was a

renewal in 1848 of the authority to conduct a ferry for four-teen years (11 Stat., 525). In 1856, the bridge was rebuilt under the original charter, but was burned by the Confederate army in the evacuation of Charleston in 1865. The company again ran a ferry until 1886, when the bridge was again rebuilt. The General Assembly, on December 21st, 1882, passed an act to revive and renew the charter of the company granted on December 17th, 1834. Either bridge or ferry was open to the public from 1808 to the present, but they were never in operation at the same time. The company, some time prior to 1817, while it was operating the ferry, built its turnpike road over the lands of Mrs. Chalmers without permission. Upon receiving a letter from her, dated October 31st, 1817, demanding a return of her land so used, or payment for it or free passage of the ferry for herself and family and servants, the company sent the following communication in reply: "Your letter of the 31st ult. was this day laid before the board of directors of the bridge company, and the following resolution passed thereon, viz: 'On application of Mrs. Chalmers, as owner of a plantation through which the turnpike road passes, for the privilege of passing the ferry as consideration for the use of the land and damages, resolved, that the owner of the said plantation, with his or her carriage horse or horses, and accompanying servants, have the privilege of passing the ferry free of toll. By order of the board. J. M. Davis, Secretary. Charleston, 14 November, 1817.' " This arrangement remained in force until Mrs. Chalmers sold the land over which the turnpike road passed to her son, H. J. Chalmers, when the company refused to allow him or her to pass the ferry free, claiming it had merely given a license revocable at will, and that it did not confer any right to cross the ferry without toll upon subsequent owners of the land. Upon this Mrs. Chalmers and her son filed their bill in the Court of Equity, praying for specific performance. This suit resulted in a decree of Chancellor Waties, in which it was held that the perpetual privilege of crossing the ferry free had been granted to the

owner of the Geddes Hall plantation, whoever such owner might be, in consideration of the use of the land over which the company's turnpike passed, and it was not, therefore, a revocable license; and it was decreed "that the defendants and their agents be perpetually restrained from exacting toll for passing their ferry from the complainant, Henry I. Chalmers, the present owner of said land, with his carriage horse or horses, and accompanying servants, subject, however, to any general restrictions which may at any time be established by the said ferry; and that the said complainant and his mother, Sophia Chalmers, do execute a release to defendants of all claim for damages or other compensation on account of the running of the turnpike road through the said land." It will be observed no reference is made to free passage of a bridge, and the issue here made was not decided nor anticipated by the decree. There seems to be no doubt that for all the time the company operated the ferry, the privileges fixed by the decree were allowed to the successive owners of the land without question. The plaintiff is now the owner of the Geddes Hall plantation, and demanded of the company for herself and family and servants the privilege of crossing the bridge free of toll. This demand was refused by the company, and the plaintiff on January 4th, 1900, brought this action to enjoin the defendant from charging her any toll for herself, her family, her servants, horses and carriages, asking a decree that the company's bridge or ferry be forever free to her, her family, servants, horses and carriages, and for judgment for damages for the past denial of her rights in this regard.

The defendant's answer really sets up three defenses: First, that the contract made with Mrs. Chalmers in 1817 for herself and the subsequent owners of the land, and the decree of Chancellor Waties fixing the rights of the parties under that contract, contemplated free passage of the ferry only, and not of the bridge. Second, that if the plaintiff or her husband, who conveyed to her, ever had any license or easement to cross the bridge free of toll, it was lost by abandon-

ment and waiver. Third, that the claim of the plaintiff is barred by the statute of limitations.

The case was referred to G. H. Sass, Esq., master, who reported that the plaintiff was entitled to the relief sought, and recommended judgment in her favor for $1,495 damages. His Honor, Judge Townsend, upon hearing the cause, overruled the exceptions on both sides and confirmed the report in a formal decree. The case is submitted to this Court on exceptions by defendant, which cover the defenses above stated. It is hardly necessary to say that the decree of Chancellor Waties construing the original contract is absolutely binding as far as it. goes in this case, because the defendant was a party to the cause in which it was made, and the plaintiff is claiming through another party to that cause, but the precise question made here was not then in issue. The great lapse of time since it was made, as we shall hereafter endeavor to show, does not in the least impair its force in this regard, unless in the meantime the parties themselves have by some act or omission defeated the right which the decree conferred.

The first defense that free passage over its ferry did not mean free passage over its bridge raises an interesting issue. The bridge company, in 1817, the date of the contract, and also in 1820, the date of the decree, was operating a ferry only, but it had a charter to establish a bridge whenever it saw fit. It was almost absolutely necessary for the purposes of either enterprise that it should retain the road through the Geddes Hall plantation. It is true, that no bridge was contemplated in 1817, when the contract was made, or for many years after, but both parties well knew the road would be needed if the bridge ever should be rebuilt. The ferry was chartered and established merely as a substitute for the bridge, and they were never in use at the same time. When the bridge was rebuilt in 1856 and again in 1882, the company continued to use the road in connection with the bridge just as it had done in connection with the ferry, without any new negotiation or recognition of any

34—65

right of the owner of the Geddes Hall plantation to object. It is impossible to resist the conclusion that the bridge company regarded the turnpike as much an adjunct of the bridge as of the ferry, when the bridge was in operation.   In other words, it attached to the bridge all the benefit it acquired from the owner of Geddes Hall for the operation of the ferry.   The contract contemplated that a perpetual right should attach to Geddes Hall in consideration of a continuing detriment to the property growing out of the perpetual use of the road by the company.   It is true, the company had a franchise to establish both a bridge and a ferry, but there was only one corporation, and it never had any intention to establish or operate them together.   These considerations lead to the inquiry, could this company, having acquired a valuable continuing right for the benefit of its ferry, substitute a bridge for the ferry, and use this right for the benefit of its bridge precisely as it had done for its ferry, without having the bridge charged with the same burden which had attached to the ferry?   Could the company, by a mere substitution of means of transportation, rid itself of a burden, and at the same time retain the benefit which it acquired by assuming the burden?   If so, then it might have built a bridge just after the contract was made, refused free passage to the owner of Geddes Hall, and at the same time retained the road.   It can hardly be maintained that this course would have received legal sanction.   In the effort to arrive at the scope of the contract, it should be kept constantly in mind that the purpose of the contract was to bestow upon the owner of Geddes Hall the right to cross the river free, in consideration of land for a road which was as essential to a bridge as to a ferry, and the ferry is mentioned because of the accidental circumstance that there was a ferry and not a bridge then in operation.   "The general intention to be collected from the whole context and every part of a written instrument, is always to be preferred to the particular expression." *Anderson* v. *Holmes,* 14 S. C., 164.   It is true, a bridge cannot be construed to be a ferry, but it may well

be a substitute for a ferry when it was manifestly so intended, and where so substituted it will be charged with the license or privilege of free passage resting on the ferry, when its owner continues to use for the bridge the easement in consideration of which the free passage was bestowed. Although the testimony is very meagre, we think the circumstances warrant the statement that it is extremely probable this was the position assumed and acted on by the bridge company for many years. It is true, the view taken by parties themselves of their obligations is not conclusive, but in all doubtful cases it is of great value. *Murray* v. *Aiken,* 37 S. C., 485; *R. R. Co.* v. *Trimble,* 10 Wallace, 383. The focal point in trying to arrive at the construction placed on the contract by the parties themselves is the closing of the ferry and opening the bridge in 1856. The fact that no testimony was offered as to anything occurring between the parties when that change was made, is significant. If the company at that time had denied the right of the owner, Mrs. Geddes, to cross the bridge free of toll and yet retained the road over her lands as an adjunct of the bridge, it is probable the change would have resulted in protest or dispute of some kind, because the company would have had the road from that date forward in perpetuity without any compensation whatever to the owner of Geddes Hall; and if there had been any question, the company could have furnished at the trial proof of the change and of its position in the matter by its minutes, as it did in other instances when dispute arose. The positive evidence on this subject is unsatisfactory, and standing alone would not be an adequate basis for a conclusion. Mr. G. G. DuPont testifies he often passed with his father, who managed the Geddes Hall plantation for the owner, and he never saw him pay toll, but the bridge was burnt when he was only five years old and his father died before it was rebuilt. A certificate was offered in evidence, signed by Geo. W. Burn, who had been the superintendent of the bridge, to the effect that Mr. W. DuPont, who was the manager of Geddes Hall, had always had the right of cross-

ing the bridge and ferry while Burn was in charge. This certificate was received by the master subject to objection, which was renewed by the defendant in exceptions to the master's report, but all exceptions were overruled, and its admission is not made a ground of appeal, so it is before this Court as competent evidence. The defendant offered no evidence whatever tending to show free passage across the river was refused the owner of Geddes Hall when the bridge took the place of the ferry in 1856. All the circumstances sustained by what evidence we have, lead to the conclusion that when the bridge was rebuilt in 1856, it was treated by both parties as a substitute for the ferry, and free passage was allowed over it to the owner of Geddes Hall. The defendant continued the use of the land for its road with this understanding, thus waiving its right, if it had any, to charge toll. We conclude, therefore, that plaintiff's grantor, G. G. DuPont, had the right to cross the bridge free of toll when it was rebuilt in 1882, and this right was acquired by the plaintiff when she purchased the land in August 28th, 1888. The first defense, therefore, must fail.

It remains to inquire whether the right has been lost by any act or omission on the part of the plaintiff, Mrs. DuPont. The defendant claims that after the building of the bridge in 1882, the plaintiff and her husband, who conveyed the land to her, always paid toll up to the commencement of this action, and thus waived the right of free passage, if it ever existed. We do not think this position can be sustained. The undisputed testimony is that Mr. G. G. DuPont, in his own behalf, and afterwards as agent for his wife, continually asserted the right to cross the bridge and had frequent interviews with the officers of the company concerning it. The fact that toll was paid when the parties could not possibly otherwise cross a bridge they were obliged to cross, certainly was not waiver of any right and no evidence of abandonment, nor was the offer of Mr. DuPont to pay a certain sum weekly instead of paying at each passage, of any consequence. It is said in *Polson* v.

_Ingram,_ 22 S. C., 547: "It will be observed that the question of abandonment is a very different question from having the easement defeated and divested by the adverse use of another. This last question is to be determined by the character of the adverse use, and how long continued, while the former depends upon the intention of the party in possession, without regard to the claims of others. Such being the law, it would have been error for the Judge to have charged as a direct and positive proposition, 'that twenty years non-user will presume the abandonment of an easement.'" _Grocery Co._ v. _Moore,_ 63 S. C., 188, 41 S. E., 88.

It is now to be considered whether the plaintiff's right is barred by the statute of limitations. The long lapse of time since the decree was rendered does not affect this question. That decree fixed the rights of the owner of Geddes Hall respecting the specific license he was then claiming to cross the ferry, and it in terms applied to all subsequent owners of the property, however remote. The bridge company could never afterward be heard to bring into issue the license therein adjudged to belong to the owner of Geddes Hall. The perpetual right established by a decree of this kind is never presumed to be destroyed or lost by mere lapse of time. Such a decree may be carried into effect by further orders in the same cause, whenever circumstances arise making this necessary, or where such changes have taken place in the situation of the parties or the property involved, as to embarrass the Court in proceeding under the original decree, another complaint in equity may be filed to carry the original decree into effect. The effectual defense here is not the mere failure of the plaintiff to sue on the decree of Chancellor Waties for twenty years after she had the right to sue. If this action be regarded as a suit on the decree, it may be that if plaintiff had simply had no occasion to use her right to cross the bridge for any period short of twenty years, she might then have sued on the decree and had her right established : and that if she had for that period merely forborne to use her privilege and had allowed twenty

years to pass after she could sue on the decree, her right of action might be gone, under section 111 of the Code of Civil Procedure. The actual denial of the plaintiff's right and adversely excluding her from it, is a very different defense. Adverse possession under the statute of limitations, set up by the defendant here, is an affirmative defense based on positive action taken since the decree was made. In this respect it stands on the same ground as would the defense of the execution of a release in a case of this kind, or as the defense of payment would stand if the complaint were based on a decree for the payment of money. It may be set up not only as a defense, but as a basis of recovery. *Busby* v. *R. R. Co.,* 45 S. C., 317, 23 S. E., 50. The statement that the right to property, in this case the privilege of free passage over a bridge established by a judgment, is not lost by mere lapse of time, however great, does not imply that the right thus established may not be lost by the act or omission of the parties in interest themselves. A decree concludes all defenses which existed at the time it was rendered, but not defenses which arise after the decree has been made, and any defense which becomes available in the interval may be set up against an action on the judgment. Black on Judgments, sec. 972; *Burwell* v. *Jackson,* 9 N. Y., 535. To illustrate: If A., fifty years ago obtained a decree of the Court putting him in possession of a tract of land as against B., it is clear that A. could now set up the judgment against B. and prevent his recovery in any right that he might then have set up; but if A. had afterwards allowed B. to obtain possession of the land and hold it adversely to him for ten years, with full notice of the adverse character of his holding, A. could not successfully rely on the former judgment to prevent the bar of the statute, because B. has acquired by his adverse possession a new title, subsequent to the judgment and entirely independent of it. This view is supported by reason, and we think it is fully sustained by authority. It is well established in this State that a subsequent purchaser of land from a judgment debtor may

hold by adverse possession as against a purchaser under the judgment. In *McRae* v. *Smith*, 2 Bay, 339, where this doctrine was first announced, the argument of the Court was that the judgment could not possibly have given a better claim to the land than an absolute conveyance from the judgment debtor would have given if made at its date, and if the judgment debtor had made an absolute conveyance at the date of the judgment, and subsequently made another deed, and the purchaser under the second deed had entered and held adversely for the statutory period, the right of the first purchaser would be gone forever. As was intimated in *Pegues* v. *Warley*, 14 S. C., 190, the reasoning would be still stronger if the judgment were for the actual title and possession of the land instead of a lien in the enforcement of which the title was acquired. By this reasoning, when a suit is brought to enforce the right established by the decree of Chancellor Waties, it could not be relied on to defeat the bar of the statute in favor of an adverse holder any more than could a deed of the same date covering the same scope. In either case, however, the burden is on the party who sets up adverse possession to show that he not only held adversely, but that he gave full notice to the real owner that he was so holding. Until this notice is given, the grantee may assume the grantor is holding in subordination to the title he has made; and the party in whose favor a decree has been made may assume other parties to the suit are holding in subordination to the decree.

The views expressed on this subject in *Van Rensellaer* v. *Wright*, 121 N. Y., 627, on which the plaintiff relies, are not in conflict with this position. All that was held in that case was that a lapse of twenty years does not presume the satisfaction of a judgment for the recovery of possession of land. So far as the judgment was concerned, that was the sole question; there was no claim in that case of adverse possession by defendant after the entry of the judgment. The distinction between that case and one where there is adverse possession for the statutory period after the entry of

the judgment is thus stated in *Root* v. *Woolworth*, 150 U. S., 415: "But aside from this, the appellant stands in the same position now that he did in the former suit, when it was decreed that he had no right, title or interest in the property. If, since that decree, he has enclosed a part of the land, cut wood from it or cultivated it, he would be treated and considered as holding it in subordination to the title of Morton and his privy in estate until he gave notice that his holding was adverse, and in the assertion of actual ownership in himself. In his position he could not have asserted adverse possession after the decree against him without bringing express notice to Morton or his vendees that he was claiming adversely. Without such notice the length of time intervening between the decree and the institution of the present suit would give him no better right than he previously possessed, and his holding possession would, under the authorities, be treated as in subordination to the title of the real owner. This is a well established rule." The conclusion cannot be avoided that where there is a judgment for the recovery of land or any right of property remaining unenforced for the statutory period, the defendant in possession is presumed to hold in subordination to the right fixed by the judgment or decree, but where the defendant in possession of the property in which a right has been fixed by the judgment or decree of the Court holds it adversely and in denial of such right for the statutory period, with full notice to the true owner of the adverse holding and denial of his right, the statute is a complete bar to any action for the enforcement of the right. *Oberlin* v. *Wells*, 163 Ill., 101; *Mabary* v. *Dollarhide*, 14 Am. St., 643, and note; note to *Snell* v. *Harrison*, 52 Am. St., 648; *Root* v. *Woolworth, supra.* Apply this conclusion to the facts of the case under consideration. In 1856, when the bridge was rebuilt, the owner of Geddes Hall had the right of free passage over it. The plaintiff, Mrs. DuPont, acquired title to Geddes Hall, August 28, 1888, and with the title, the right of free passage. This right was actively denied to her by the bridge company continuously from that

time until the commencement of this action, January 4th, 1900. Her claim was in the meantime frequently pressed upon the company and was always refused recognition. She had full and repeated notice that the right she is now seeking to enforce would not be recognized, and the bridge company was operating the bridge in constant denial of her claim, requiring her to pay toll every day. No more complete adverse claim and no more explicit notice of it could be suggested.

In the foregoing discussion of the statute of limitations, we have treated the right of passage of the bridge as if it had been expressly adjudged by the decree of Chancellor Waties, and this action as brought to carry that decree into effect. The issue made by plaintiff here that the bridge should be charged with free passage just as the ferry had been before it was replaced by the bridge, was not before the Court and was not decided by that decree. We are inclined to the view that this, therefore, cannot be regarded an action on the decree, but rather an action to establish a right of the plaintiff as owner of Geddes Hall under the contract of the bridge company, beyond the adjudication made by the Court in 1820. If this be the correct view, then the plaintiff's right of action under the contract accrued in 1888, when she acquired the title to Geddes Hall and the right to free passage of the bridge, and the express withholding and denial of her right had continued for more than ten years before the action was brought. Therefore, whether we regard this an action on the decree of 1820 or on the contract of 1817, the same result would follow.

The plaintiff, however, claimed that the passage of the river in 1900 by members of Mrs. DuPont's family free of toll would break the bar of the statute. The evidence does not show that this was regarded by Mrs. DuPont or the bridge company as any exercise of her right to cross the bridge free of toll, but only the ferry. A part of the bridge had been broken, so that it could not be crossed. If Mrs. DuPont had asserted her right to cross the bridge

free of toll at this time, and it had been accorded her, a very different question would be presented; but it is not every entry that breaks the continuity of adverse possession. There must be an assertion of right and performance of some act that reinstates the party in possession of his right.  See notes, 13 Am. Decis., 185, and 83 Am. Decis., 499.  But, in addition to this, the bar of the statute was complete and the plaintiff's right entirely gone, when the crossing of the river free of toll took place in 1900, after the commencement of this action.

Respondent further insists that even if adverse possession for ten years with full notice to the true owner would bar an action for the recovery of land based on a contract or on a judgment rendered for its possession, this rule would not apply to an easement or license.  It is not material to the discussion of this question whether the privilege to which the plaintiff was entitled be regarded an easement or a license, for a license can stand on no higher ground than an easement in this respect.  Nor is it necessary to decide whether a bridge is real or personal property, because sufficient time has passed during which the plaintiff was continually denied her right to free passage, for the statute to be as effective in one case as in the other.  We can discover no principle of law upon which the plaintiff's position that an easement or license is not barred by the actual denial and exclusion of the claimant by the owner of the servient property for ten years, can be sustained.  The case of *Bowen* v. *Team,* 6 Rich., 300, is conclusive.  It was there held, the continued adverse possession for the statutory period of a right of way by the owner of the soil over which it passes to the exclusion of the person claiming the easement, is a complete bar under the statute of limitations.  In *Railway* v. *Beaudrot,* 63 S. C., 269, 41 S. E., 299, the same principle is again announced, and it is supported by the Courts of other States.  Jones on Easements, sec. 866.  The case of *Parkins* v. *Dunham,* 3 Strob., 225, is not opposed to this view, for the decision there that the easement to flow water was not

barred by the owner of the land cultivating it, for the statutory period is placed on the ground that the easement to overflow was not inconsistent with a degree of cultivation, and the cultivation of the land was no interruption of the easement.   In the case now under discussion there was an absolute denial and deprivation of the license or easement for more than ten years, with full and repeated notice to the claimant.   The plea of the statute of limitations must be sustained.   It is, therefore, unnecessary to consider the plaintiff's exceptions.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and the complaint dismissed.

*Submitted on printed Briefs.—R.*