[Civ. No. 3632.   Fourth Dist.   June 11, 1947.]

N. V. JAFFRAY, Appellant, v. LEO J. MIES et al.,
Respondents.

James R. Jaffray for Appellant.

Herbert C. Kelly and Monroe & McInnis for Respondents.

BARNARD, P. J.—This is an action to quiet title involving certain lots in Oceanside in San Diego County.  In a former action, title to these lots was quieted in San Diego Improvement Co. as against P. W. Marshall.  (*San Diego Improvement Co.* v. *Brodie,* 215 Cal. 97 [8 P.2d 1027].)  The defendants in the present action later acquired title to these lots from San Diego Improvement Company.  Still later, and on May 2, 1945, the plaintiff, for a consideration of $10, obtained a deed to the property from P. W. Marshall.  Although he was married at the time, Marshall's wife did not join in this deed.

On May 5, 1945, the plaintiff brought this action to quiet her title to these lots as against these defendants. An answer was filed, including a prayer for a judgment quieting title to the lots in the defendants. The court found in all respects in favor of the defendants and entered a judgment that the plaintiff has no right, title or interest in these lots, and quieting title thereto in the defendants. From this judgment the plaintiff has appeared, the appeal being presented on a settled statement.

It is first contended that under certain conveyances made prior to the decision in *San Diego Improvement Co.* v. *Brodie, supra,* the record title to a one-third interest in and to three of the lots in question is in the plaintiff. This contention cannot be sustained both because the record fails to show that any valid title was thereby conveyed to the plaintiff, and because the settled statement establishes the fact to the contrary. It appears therein that the plaintiff admits that neither she nor Marshall had any color of title subsequent to the Brodie case, and that neither of them has any claim to the property in question, after title was quieted against Marshall and others in the Brodie case, "unless such title arose by adverse possession."

The defendants, by deeds and other instruments introduced in evidence, established a chain of title from San Diego Improvement Company showing full legal title to the lots to be vested in them. They also introduced a series of tax deeds dated July 1, 1936, conveying the property in question to the state for delinquent taxes levied in 1930, a deed from the tax collector of San Diego County dated November 2, 1944, conveying this property to the city of Oceanside, pursuant to the provisions of chapter 8, part 6, division 1 of the Revenue and Taxation Code, and a quitclaim deed from the city of Oceanside dated November 22, 1944, conveying this property to the defendants.

The plaintiff's main contention is that after the judgment in *San Diego Improvement Co.* v. *Brodie,* quieting title against Marshall and enjoining him from asserting any claim to the property, Marshall continued to cultivate the land in question, through tenants, and thus acquired title by adverse possession, which title passed to the plaintiff by the deed of May 2, 1945. The only witness for the plaintiff was Marshall. He admitted that he had paid no taxes, that he had made no improvements on the property, that the property was not enclosed by fences, and that he had no color of title. No evidence was

introduced to show that taxes had not been assessed against the property, although it does appear that title was in the state for some years after 1936. Marshall testified that after the judgment in the Brodie case he continued to occupy the premises by renting to tenants; that at no time did he have any communications with the San Diego Improvement Company or its successors in interest; that he knew that the San Diego Improvement Company had conveyed the property to residents of Los Angeles; that he did not inform any of these persons or any officer of the San Diego Improvement Company that he was collecting rent on the property; and that he collected no rent after he found that the State Department of Tax-deeded Land had leased the property in August, 1944, to one Romo. There was no definite evidence as to how much of the land had been leased to tenants, or during what periods of time. However, Marshall further testified that he ''occupied, cultivated and used it, without a break, since November, 1918, for myself.''

Not only was the evidence not sufficient, under well established rules, especially as applying to city property, to compel a finding in favor of the plaintiff on the issue of the adverse occupancy and use of these lots for the required period, but something more was here required by way of notice to the other parties that any continued use of the property by Marshall, after the decree against him in the Brodie case, was hostile and under a claim of right and not merely permissive.
▮ The fact that a judgment had been entered quieting title against Marshall and enjoining him from claiming any interest in the property should not be lightly dismissed. Under such circumstances, some affirmative showing that any continued occupancy by the defeated party was intended to be adverse, and not merely subject to the other party's superior right, should be required. While this point does not appear to be directly decided in this state this principle has been fully recognized elsewhere. The general rule is thus stated in 2 Corpus Juris Secundum 672:

''Where a defendant in a suit to quiet title remains in possession or assumes possession after a decree adverse to him and vesting title in another, his possession is presumed to be in subordination to the true owner and does not become adverse without express notice of his adverse claim brought home to said owner.''

In *Dupont* v. *Charleston Bridge Co.*, 65 S.C. 524 [44 S.E. 86], it is said:

"The conclusion cannot be avoided that, where there is a judgment for the recovery of land or any right of property remaining unenforced for the statutory period, the defendant in possession is presumed to hold in subordination to the right fixed by the judgment or decree; . . ."

Other cases recognizing this principle are *Woolworth* v. *Root*, 40 F. 723 (affirmed 150 U.S. 401 [14 S.Ct. 136, 37 L.Ed. 1123]) and *Green* v. *Strubbe*, 234 Ky. 380 [28 S.W.2d 469]. While the facts are considerably different, the same principle was recognized and applied in *West* v. *Evans*, 29 Cal.2d 414 [175 P.2d 219].

A further consideration is that title to this property was in the state under a tax deed from July 1, 1936, until November 2, 1944, when it passed to the city of Oceanside, and on November 22, 1944, the city of Oceanside deeded it to these defendants. Less than five years elapsed between the time the decree in the Brodie case became final and the date when the title passed to the state, and under well established rules Marshall could not have claimed adversely to the state between 1936 and 1944, when he recognized the state's right by receiving no more rent.

Upon the record before us the evidence is sufficient to support the findings and judgment.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied July 3, 1947, and appellant's petition for a hearing by the Supreme Court was denied August 7, 1947.