4 Cal.Rptr. 85]

[Civ. No. 6063.   Fourth Dist.   Apr. 18, 1960.]

LONNIE CASE et al., Respondents, v. WALTER J. URIDGE, Appellant.

Claude L. Rowe for Appellant.

Frank J. Creede, Jr., for Respondents.

GRIFFIN, P. J.—Plaintiffs, cross-defendants and respondents, husband and wife, brought this action in injunction and for damages (both compensatory and punitive) against defendant, cross-complainant and appellant, to prevent defendant from tearing down fences and trespassing upon and interfering with plaintiffs' peaceful enjoyment of a 10-foot strip of land across plaintiffs' property and bordering upon defendant's property which was being used by defendant mainly for "turn-row" purposes in caring for and in the maintenance of defendant's adjoining orange orchard.

Defendant, by answer and cross-complaint, admits destruction of the fences on four or five different occasions and use of the 10-foot strip, but claims the right of use for agricultural and public road purposes of said strip by reason of a prescriptive right, acquired by him over a period of 30 years. The cross-complaint prays that plaintiffs take nothing by their complaint and that defendant have damages (both compensatory and punitive) against plaintiffs.

In 1920, defendant purchased a 40-acre orange orchard near Sanger (hereinafter referred to as the Uridge property). His orchard lies due south of and adjoins a 40-acre ranch purchased by plaintiffs in 1956 (hereinafter referred to as the Case property). Soon thereafter plaintiffs planted young trees thereon. It was previously, about 1946, owned by Elmer Moore, who lived there and farmed it until about 1952 when it was taken over by his father, Fred Moore. Large orange trees and other diversified fruit trees occupied this acreage until 1953. Apparently some of the trees were taken out and the adjoining acreage to defendant's land was planted to cotton. It appears that both defendant and Elmer Moore, during this period, used this so-called 10-foot strip of land for turn-row purposes and possibly for other agricultural purposes and in conveying the picked fruit in small trucks to a common loading place. One witness for plaintiffs described this strip at that time as being just wide enough for a Jeep to pass through and the trees on each side would brush it; that it led to no particular roadway and could not be described as a roadway. Defendant produced witnesses who described it as a roadway, used by trucks, Jeeps and other agricultural machinery, not only for turn-row purposes but as a means of access to other portions of the surrounding groves. Immediately to the west of defendant's grove, the divorced wife of defendant owned a 40-acre orange grove, jointly farmed by defendant and her between

1943 and 1957. To the immediate east of defendant's grove was another 40-acre grove owned by defendant's son-in-law. Plaintiffs had their 40-acre boundary line surveyed in 1956 and there is no question that the first wire fence erected by plaintiffs was built on plaintiffs' property a few inches north of the dividing line between the property owned by plaintiffs and that owned by defendant. As thus built, the outer branches of defendant's trees extended from three to five feet from the property line, and accordingly would not permit turn-row activity between the trees and the fence. The rows of plaintiffs' small trees were set back about 20 feet from the fence line, measured from the trunks of the trees.

As bearing on the question whether defendant's claimed use of plaintiffs' 10-foot strip of property was adverse to the true owner and hostile to his title, actual, continued, open and under a claim of right and having all the elements necessary to acquire title by adverse possession (*Clarke* v. *Clarke,* 133 Cal. 667, 669 [66 P. 10]), defendant points to the testimony produced by him and claims the evidence produced by plaintiffs creates no conflict on the question and therefore the court erred in finding that plaintiffs were the owners of the 10-foot strip in question and that defendant was not the owner of an easement to use it for road and other purposes indicated.

The fact that defendant did make use of this strip, to some extent, in certain seasons, as a turn-row, is not in dispute. The testimony as to the extent of this use for road and other purposes is in conflict. ▮ The rule in this respect is well stated in *Clarke* v. *Clarke, supra* (syllabus) :

"One who claims a prescriptive right to a private way over the lands of another person has the burden of proof to establish all of the elements essential to constitute such right."

This also applies to the extent of the prescriptive right sought to be imposed. (*Hannah* v. *Pogue,* 23 Cal.2d 849 [147 P.2d 572] ; 17 Cal.Jur.2d 129, § 24.)

▮ The question then arises whether the user, as to which there is no conflict in the evidence, was adverse, hostile, actual, continued, open and under a claim of right, or whether such user lacked these necessary elements and was, in fact, a mere matter of neighborly accommodation. Usually these questions are factual questions for the determination of the trial court in the light of the relations and conduct of the parties, the situation of the property, and all the circumstances of the case. ▮ See *Clarke* v. *Clarke, supra* (syllabus) :

"Where the defendant and his tenants were in the habit of passing over an uninclosed strip of land, belonging to the plaintiff, in going to and from their business, the law will presume that such use was by permission or acquiescence of the owner; and his mere knowledge of such occasional use does not raise a presumption that it was hostile or under a claim of right.

■ "One who was allowed by silent permission of the owner to pass over his uninclosed land for five years, and who never, at any time, communicated to the owner a claim of a right of way over such land, has no prescriptive right thereto.

■ "Though an owner of land may by his negligence allow the statute of limitations to run against him, where he knows that an adverse user under a hostile title or claim of right is asserted against him, yet no negligence is to be attributed to him from mere acts of kindness in allowing others to pass over his vacant lot without objection."

■ The factual background giving rise to the use of this strip by defendant is a mass of confusion. It might well appear that it was being used by both defendant and plaintiffs' predecessors in interest, in common, and as an act of neighborly accommodation. Later, those owners encountered some difficulty with defendant about irrigation water crossing this strip and flooding onto defendant's property. This was after Elmer Moore accused defendant of flooding defendant's acreage to keep him from passing by defendant's place. There is some evidence that the previous owner of the Case property (Elmer Moore) set some stakes near this line from his own measurements and that defendant destroyed them. Likewise, there is evidence that a small claims action arose in July, 1952, in which defendant here obtained a judgment against Fred Moore for $100 which was subsequently appealed to the superior court and for some undisclosed reason the appeal was dismissed.

Plaintiffs purchased the property in 1956 and it is quite apparent that neither defendant nor plaintiffs knew exactly where the actual dividing line between their properties was located on the ground in respect to this 10-foot strip or in respect to defendant's trees. Plaintiff husband measured and marked off what he believed the line to be and posted marks accordingly. He testified that when he first examined the land it looked as though defendant was using it as a turn-row on occasions and during certain seasons, but he definitely stated there was no evidence of any roadway existing; that a survey was made on May 12, 1956, by both parties and they generally

conceded that these surveys coincided with each other; that in October, 1957, survey monuments were erected by plaintiffs and that defendant tore them up; that plaintiff husband placed a post and a three-wire fence across the boundary line about 6 inches north of the line on plaintiffs' property; that a few days thereafter the fence was knocked down with a tractor, admittedly by defendant and his foreman; that the fence was replaced and immediately knocked down again by defendant; that he called defendant on the telephone and asked if there wasn't some way they could amicably adjust the matter and defendant called him dirty names and hung up; and that on two other occasions he again replaced the fence, with the same result. Plaintiff husband claimed that he first erected the fence to guard against grasshopper invasion.

Defendant claims he called his attorney and the district attorney and was advised that if he had a prescriptive easement he was authorized to do this. Plaintiff husband claims he called the constable and the constable would not arrest defendant for trespass without a warrant. This action followed, and defendant's ex-wife appeared as a witness for plaintiffs, giving some assurance that this was typical of defendant's past actions. She also minimized defendant's claim that this strip was used for road purposes or for any purpose other than spasmodic use as a turn-row. Plaintiff husband stated that defendant never told him he claimed an easement over this strip of property and he never knew what his claimed right was based upon until this action was filed. It was not affirmatively shown that previous owners had actual notice of such claim of prescriptive right imparted to them.

The rule seems to be that an adverse use must be under a claim of right, communicated to the owner of the land, or the use of a claimed easement must be so obviously exercised as to constitute implied notice of the adverse claim. (*Clarke* v. *Clarke, supra*; *Smith* v. *Skrbek,* 71 Cal.App.2d 351 [162 P.2d 674]; *Dooling* v. *Dabel,* 82 Cal.App.2d 417 [186 P.2d 183].) Permissive use alone is not sufficient to establish a prescriptive title to a right of way over the lands of another. (*Rochex & Rochex, Inc.* v. *Southern Pacific Co.,* 128 Cal.App. 474 [17 P.2d 794].)

*Eddy* v. *Demichelis,* 100 Cal.App. 517 [280 P. 389], involved a similar state of facts and fully supports the court's finding in the instant case. It held (quoting from the syllabus):

''The use of a turn row, a place used for the purpose of

turning teams and tractors drawing cultivating machinery, partakes so much of the nature of a custom as generally to excite no suspicion that it is hostile to the neighboring owner whose land forms part of the turn row.

 ■ ■ ''The presumption of ownership of land is with the paper title and clear evidence is necessary to overcome this presumption; and the adverse claim of right must not only exist in the mind of the claimant, but must be proved to have been communicated in some way to the owner, so that his failure to object may be taken against him as an acknowledgment or acquiescence in the right claimed.

''. . . . . . . . . . . . .

 ■ ''A prescriptive title cannot arise out of an agreement, but must be acquired adversely, and it cannot be adverse when it rests upon a license or mere neighborly accomodation.''

It does not affirmatively appear that the basis of defendant's claim (i.e., title by prescription) was known to plaintiffs until defendant's present conduct and hostility were manifested. (*Dooling* v. *Dabel, supra; Lyons* v. *Schwartz,* 40 Cal. App.2d 60 [104 P.2d 383]; *Smith* v. *Skrbek, supra.*)

 ■ In *Jaffray* v. *Mies,* 80 Cal.App.2d 291, 293 [181 P.2d 672], it was held that where a right in the first instance is permissive, it requires more than continued use to show adverse occupancy for the period in question, such as notice to the legal owner that any continued use of the property was hostile under a claim of right. See also *Jones* v. *Tierney-Sinclair,* 71 Cal.App.2d 366, 370 [162 P.2d 669].

 ■ The usual rule is to treat the presence or absence of an adverse claim of right as an issue of fact, giving consideration to all the circumstances and inferences that may be drawn. ■ Moreover, it has been held that it requires more circumstances and stronger evidence to establish a prescriptive right to unenclosed land than to urban land. (17 Cal.Jur.2d 125, § 22; *O'Banion* v. *Borba,* 32 Cal.2d 145 [195 P.2d 10].)

 ■ The ultimate burden of proving a prescriptive right rests upon the claimant or one who is to be benefited by its establishment. He must clearly prove its elements. ■ Evidence of adverse user, in order to establish an easement by prescription, must be clear and positive. (17A Am.Jur. 686, § 73.)

Defendant concedes this rule, but argues that since he met the burden of showing adverse use for the required time, a

presumption arose in favor of a grant of easement and the burden was then upon plaintiffs to show that the use of the easement was permissive. (Citing such authority as *Woo* v. *Martz*, 110 Cal.App.2d 559 [243 P.2d 131] ; *Board of Directors of the Turlock Irr. Dist.* v. *City of Ceres*, 116 Cal.App.2d 824 [254 P.2d 907].)

The Supreme Court, in *O'Banion* v. *Borba, supra,* held (in the syllabus) :

"Although it is sometimes presumed that the use of an easement is under a claim of right adverse to the owner of the servient tenement where the claimant has shown an open, continuous, notorious and peaceable use for the prescriptive period, the preferable view is to treat the case the same as any other, that is, the issue is ordinarily one of fact, giving consideration to all the circumstances and the inferences that may be drawn therefrom."

It was there held, as we must here hold, that it may be that the trial court could have come to a contrary conclusion than here reached, but it was not required to do so as a matter of law under the evidence here presented.

Next, it is argued that the trial court erred in refusing to receive in evidence an abstract of judgment of the small claims court involving some claim between defendant and one Fred Moore. The record does not show on its face the nature of the claim or that a borderline dispute or a prescriptive right to an easement was involved. The testimony indicates it involved a matter of flooding defendant's orchard by one of plaintiffs' predecessors in interest. The court directed defendant to procure the judgment roll in the case. If such a record was available it was not produced. The objection was properly sustained.

In conclusion, it should be here noted that plaintiffs seek an injunction restraining defendant from trespassing on plaintiffs' property, from damaging improvements thereon or otherwise interfering with their peaceful enjoyment of their property, and for damages as alleged. Defendant's defense was a claim of right of easement by prescription. By his cross-complaint, he does not pray for a declaration or determination of such an easement or to define its size, use or extent. Defendant's counsel made an unsuccessful attempt to amend the prayer to include such request. No contention is made on this appeal that the denial of such request was erroneous. The compensatory damages in the sum of $250 awarded to plaintiffs

were within reason and the evidence fully supports the award of $250 as exemplary damages. Denial of relief to defendant on his cross-complaint was justified.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied May 17, 1960, and appellant's petition for a hearing by the Supreme Court was denied June 8, 1960.